IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL FAYLOR,                                    )
                            Plaintiff,            )
                                                 )
            vs                                   )    Civil Action No. 08-996
                                                 )
MICHAEL SZUPPER, individually and as             )
Relocation Specialist United States Dept. of     )
Housing and Urban Development (HUD);              )
JOHN TOLBERT, individually and as Field          )
Office Director, HUD; WESTMORELAND               )
COUNTY, PA., HOMES BUILD HOPE, a                 )
Service of ADELPHOI, USA; WEM                     )
HOUSING, L.P., CHAD RUFFNER,                      )
individually and as Executive Director WEM       )
Housing L.P. and in official capacity at         )
HOMES BUILD HOPE; PROFESSIONAL                   )
COMMUNITY COORDINATORS, INC.,                    )
and CARLOTTA PAIGE, individually and in          )
her official capacity AT PROFESSIONAL            )
COMMUNITY COORDINATORS, INC.,                    )
                            Defendants.           )


MEMORANDUM OPINION AND ORDER


MITCHELL, Magistrate Judge:

            Presently before the Court is a motion to dismiss the amended complaint filed by

defendants Westmoreland County, PA and its Commissioners, Thomas Bayla and Thomas

Ceraso, as well as a motion to dismiss or, in the alternative, for summary judgment submitted by

defendants Michael Szupper and John Tolbert.  For reasons discussed below, the motion to

dismiss filed by Westmoreland County, PA, Thomas Bayla and Thomas Ceraso (Document No.

67) will be granted as to all claims except for the plaintiff's procedural due process claim in

Count II against Westmoreland County, and the motion to dismiss or, in the alternative, for summary judgment filed by defendants Szupper and Tolbert (Document No. 69), treated as a motion to dismiss, will be granted as to all claims except for the procedural due process claim against them in their individual capacities in Count II.

The plaintiff, Cheryl Faylor, proceeding pro se, has filed an amended civil rights complaint arising from her relocation to other housing pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. §§ 4601, et seq.[1] The plaintiff complains that in the course of her relocation to other housing, the defendants, individually and in conspiracy, violated her Fourteenth Amendment rights to equal protection and due process under 42 U.S.C. §§ 1983 and 1985 and are liable for breach of contract/unjust enrichment and negligence. The Court's federal question and supplemental jurisdiction are invoked.

Named as defendants in the amended complaint are Michael Szupper, individually and as Relocation Specialist for the United States Department of Housing and Urban Development ("HUD"), John Tolbert, individually and as Field Office Director of HUD (collectively, the "Federal defendants"), Westmoreland County, PA, and its Commissioners Thomas Bayla and Thomas Ceraso, individually and in their official capacities as County Commissioners for Westmoreland County, PA (collectively, the "County defendants"), Homes

---

1. The URA provides relocation benefits to persons and businesses that fit the statutory definition of "displaced persons". <u>Messer v. Virgin Islands Urban Renewal Board</u>, 623 F.2d 303, 304 (3d Cir. 1980). In relevant part, the URA defines the term "displaced person" as: "any person who moves from real property ... as a direct result of a written notice of intent to acquire or the acquisition of such real property ... for a program or project undertaken by a Federal agency or with Federal financial assistance..." 42 U.S.C. § 4601(6)(A)(i)(I).

Build Hope ("HBH"), WEM Housing L.P., Chad Ruffner, individually and as Executive Director of WEM Housing and in his official capacity at HBH, Professional Community Coordinators, Inc. ("PCC"), and Carlotta Paige, individually and in her official capacity at PCC. The Federal defendants and County defendants have moved to dismiss the amended complaint, while the other named defendants have filed answers to it.

In her amended complaint, the plaintiff alleges that she was a resident at 411 South 6th Street in Jeannette, PA for over five years; that she lived in a townhouse unit that was one of several units targeted for demolition to make way for a renovation project called the Jeannette 6th Street Project (the "Project"); and that the Project utilized federal funding through HUD's HOME Investment Partnership Program.[2]

In 2006 and 2007, HUD and Westmoreland County (the "County") entered into Agreements pursuant to the HOME Investment Partnerships Act, 42 U.S.C. § 12701, et seq., whereby HUD agreed to make funds available in exchange for the County's agreement to develop affordable housing. The County disbursed HUD funds for the Project to HBH, which created WEM Housing to act as the general contractor on the Project. As general contractor, WEM Housing purchased the townhouse units on South 6th Street and hired PCC and Carlotta Paige to assist in relocating residents affected by the Project.

The plaintiff contends that on or about February 21, 2007, WEM Housing signed a purchase agreement with the owner of the building where she resided which was the "initiation of negotiations", at which time the agency was to notify her in writing of her eligibility for

_____

2.    In setting forth the backdrop of this suit, we utilize the plaintiff's pleadings and exhibits, the movants' motions, briefs and exhibits, and the plaintiff's responses thereto.

relocation assistance, but it failed to do so. In a letter dated March 2, 2007, HBH informed the plaintiff that her family may be displaced by the Project, and it provided her with information as to her potential rights as a displaced person under the URA.[3]

On or about April 2, 2007, employees from PCC met with the plaintiff to obtain information from her which would be used to complete her relocation assistance. The plaintiff avers, however, that she received no further information or contact from HBH or PCC until August 2007, by which time her townhouse unit and other units in the building had fallen into disrepair. For instance, the plaintiff asserts that rotting trash and discarded mattresses accumulated in front of the building, grass and weeds grew taller than four feet high, abandoned units were not cleaned, and cockroaches, fleas and other vermin were present on the premises.

The plaintiff contends that on September 12, 2007, she saw Carlotta Paige and complained about her living conditions and inquired about relocation efforts, and Paige told her they were working on it; that on or about September 21, 2007, she received a letter from Chad Ruffner, informing her that she was eligible for relocation assistance and needed to relocate to a different residence upon 90 days notice, but the letter did not advise her how much rental assistance she would receive; and that on September 24, 2007, she wrote to Ruffner complaining about the vermin problem, after which HBH fumigated the vacant, uncleaned unit next to hers, and Ruffner inspected her premises and said he would talk to Carlotta Paige about it.

The plaintiff asserts that in October 2007, she witnessed two house fires within a four-day period just a block from her residence, and fearing increased vandalism from abandoned

---

3. Generally, "[n]o lawful occupant shall be required to move unless he or she has received at least 90 day's advance written notice of the earliest date by which he or she may be required to move." 49 C.F.R. § 24.203(c)(1).

housing in the area, she informed HBH and HUD that she intended to move from her residence. In a letter dated October 12, 2007, HBH provided notice to the plaintiff that she had to vacate her unit within 90 days; this letter also informed the plaintiff that she was eligible for $1,450.00 for a moving allowance and $17,262.00 for rental assistance pursuant to the URA.

On October 22, 2007, the plaintiff moved from her residence and signed a lease for a replacement dwelling. She received an advance for her security deposit and the first month of rent in the new dwelling. On November 29, 2007, PCC paid the rental assistance funds.

In a letter dated December 2, 2007, the plaintiff informed HBH and HUD of her intent to appeal her relocation assistance determination, as she believed she was entitled to $17,000 in additional funds. By letter dated February 1, 2008, Chad Ruffner informed the plaintiff that he needed additional information to assess her appeal. In a letter dated March 13, 2008, John Tolbert of HUD advised the plaintiff that after reviewing her appeal, it was determined that she and her family qualified for an additional $9,461.20 in rental assistance.

The plaintiff wrote a letter to John Tolbert dated March 17, 2008, expressing her dissatisfaction with the recalculated amount of her rental assistance. Copies of this letter were sent to Michael Szupper of HUD and the County Commissioners. On March 31, 2008, the plaintiff received payment in connection with her appeal in the amount of $9,961.20, a sum which she believes is less than what she is entitled to under the URA.

The URA is designed to minimize the hardship of displacement on persons like the plaintiff who are displaced as a direct result of programs or projects undertaken by a federal agency or with federal financial assistance. 42 U.S.C. § 4621(b). To that end, the URA provides relocation services and assistance to displaced persons. See, 42 U.S.C. § 4625 and 49 C.F.R.

Part 24.[4]   The parties agree that the plaintiff was eligible to receive several types of URA relocation services, including: relocation advisory services pursuant to 49 C.F.R. § 24.205; relocation notices pursuant to 49 C.F.R. § 24.203; reimbursement for moving expenses pursuant to 49 C.F.R. §§ 24.301 and 24.302; and payments for the added cost of replacement housing or rental assistance pursuant to 49 C.F.R. §§ 24.401-24.403.

In her amended complaint, the plaintiff contends that in the course of her relocation, the defendants failed to comply with the URA in several respects -- such as by failing to provide certain relocation services, not properly calculating her relocation rental assistance or making timely payment, and not promptly or properly determining her appeal -- all of which deprived her of her Fourteenth Amendment rights to equal protection (Count I) and due process (Count II) under 42 U.S.C. § 1983.  In addition, the plaintiff complains that the defendants engaged in a conspiracy to violate her civil rights under 42 U.S.C. § 1985(3) (Count V) and are liable for breach of contract/unjust enrichment (Count III) and negligence (Count IV).

County defendants' motion to dismiss:

In response to the amended complaint, the County defendants have moved to dismiss it pursuant to Fed.R.Civ.P. 12(b)(6).  Among their arguments for dismissal, the County defendants assert that the plaintiff has failed to establish municipal liability, as she does not allege deprivation of rights from an unconstitutional County policy or custom; that the individual

_____

[4].   In pertinent part, the URA mandates that "[p]rograms or projects undertaken by a Federal agency or with Federal financial assistance shall be planned in a manner that (1) recognizes, at an early stage in the planning of such programs or projects ... the problems associated with the displacement of individuals ..., and (2) provides for the resolution of such problems in order to minimize adverse impacts on displaced persons ... 42 U.S.C. § 4625(a).  Under the URA, relocation assistance advisory services and programs are to be made available to displaced persons by the head of any displacing agency.  See, 42 U.S.C. §§ 4625(b)-(c).

County defendants had no personal involvement in the alleged wrongdoing and are entitled to qualified immunity; that the plaintiff has failed to set forth cognizable civil rights claims against them; and that her state law claims are barred by the PA Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541, et seq.

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Estelle v. Gamble, 429 U.S. 97 (1976). A complaint will be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). To survive a motion to dismiss, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

The Third Circuit Court of Appeals has held that a private cause of action exists against state officials for violations of § 4625 of the URA. Pietroniro v. Borough of Oceanport, 764 F.2d 976, 980 (3d Cir. 1985), cert. denied, 474 U.S. 1020 (1985). Also see, Munoz v. City of Philadelphia, 2007 WL 2973837, *7-*8 (E.D.Pa., Oct. 10, 2007) (stating that "a private cause of action exists under § 1983 for violations of § 4625(a) of the URA"), citing Pietroniro, supra. The defendants do not argue otherwise.

As discussed above, HUD and the County entered into agreements pursuant to the Home Investment Partnerships Act, 42 U.S.C. §§ 12701, et seq., wherein HUD agreed to make funds available in exchange for the County's agreement to develop affordable housing. The plaintiff alleges, and the record shows that in order to receive HOME Investment partnership funding ("HOME funds"), the County provided certifications that it would comply with the URA and its implementing regulations and follow a residential anti-displacement and relocation

assistance plan under section 104(d) of the Housing and Community Development Act of 1974.[5]

In order "to receive federal funds for projects, ... state and local agencies must certify that they will provide relocation benefits under the URA to affected persons and businesses." Supreme Oil Co. v. Metropolitan Transp. Authority, 157 F.3d 148, 150 (2d Cir. 1998), citing 42 U.S.C. § 4604. "The grantee agency may contract with another public or private agency to administer the relocation benefits, but the actual grantee remains at all times responsible for assuring that the federal funds are disbursed in compliance with the URA." Supreme Oil Co., 157 F.3d at 150. The URA also mandates that a "displacing agency" shall ensure that relocation assistance services are made available to displaced persons. 42 U.S.C. § 4625(b)-(c). A "displacing agency" means "any Federal agency carrying out a program or project, and any State, State Agency, or person carrying out a program or project with Federal financial assistance, which causes a person to be a displaced person." Id. § 4601(11).

Here, the County contracted with HBH to develop the Project at issue, and in connection therewith, it loaned HOME funds to HBH and WEM Housing; WEM Housing hired PCC and Carlotta Paige to assist in relocating persons displaced by the Project, but the County remained responsible for ensuring that the relocation complied with the URA and its regulations.[6] The plaintiff contends that County Commissioners Bayla and Ceraso lent HOME

---

5. See, Federal defendants' Exhibits A, B, D and E in support of their present motion, and amended complaint at ¶¶ 86-87.

6. See, Federal defendants' Exhibit C in support of their present motion, and amended complaint at ¶¶ 88-89. We note that our review of the parties' exhibits does not convert the defendants' Rule 12(b)(6) motions to ones for summary judgment, for "a defendant may supplement the complaint by adding exhibits such as public records and other indisputedly authentic documents underlying the plaintiff's claims." Sentinel Trust Co. v. Universal Bonding

(continued...)

funds to HBH and WEM Housing illegally, as neither organization qualified for such funds.[7]

She also complains that the defendants failed to comply with the URA and its implementing

regulations in several respects, such as by not providing certain relocation notices or services in a

timely manner, not properly calculating her rental assistance payments, and not promptly or

properly reviewing her appeal.[8]

A municipality may be held liable for civil rights violations where conduct

pursuant to its policy or custom causes a constitutional violation. Monell v. Department of

Social Services of the City of New York, 436 U.S. 658, 691 (1978). The County defendants

argue that the plaintiff has failed to allege a deprivation of her rights which was caused by a

County policy or custom. However, an official policy may arise when a decision to adopt a

particular course of action is properly made by a government's authorized decision-makers.

Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

In Pembaur, supra, the Supreme Court explained that "a municipality may be

liable under § 1983 for a single decision by its properly constituted legislative body -- whether or

not that body had taken similar action in the past or intended to do so in the future -- because

even a single decision by such a body unquestionably constitutes an act of official government

policy." Id. at 480. Here, the County, through its Commissioners, took the following acts: it

entered into agreements with HUD pursuant to the HOME Investment Partnerships Act to

---

6. (...continued)
Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

7. See, amended complaint at ¶ 91.

8. Id. at ¶ 100.

develop affordable housing with federal HOME funds; it loaned HOME funds to HBH and

WEM Housing to develop the Project; and it provided certifications that it would comply with

the URA as a condition for its receipt of HOME funds. Accepting as true the plaintiff's

allegations that the County failed to fulfill its obligations under the URA which resulted in her

harm, municipal liability may lie.

Importantly however, to state a § 1983 civil rights claim, the plaintiff must plead

that the defendants, acting under color of state law, deprived her of a right secured by the

Constitution or laws of the United States. <u>Kacher v. County of Bucks</u>, 455 F.3d 418, 423 (3d

Cir. 2006). "[T]he first step in evaluating a § 1983 claim is to identify the exact contours of the

underlying right said to have been violated and to determine whether the plaintiff has alleged a

deprivation of a constitutional right at all." <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008).

In Count I, the defendants are said to have violated the plaintiff's equal protection

rights by failing to provide her with relocation assistance and services mandated by the URA.

The United States Supreme Court has explained:

> The Equal Protection Clause of the Fourteenth Amendment
> commands that no State shall 'deny to any person within its
> jurisdiction the equal protection of the laws,' which is
> essentially a direction that all persons similarly situated
> should be treated alike.

<u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).

Clearly, the plaintiff has failed to plead a viable Fourteenth Amendment denial of

equal protection claim. Where a plaintiff fails to allege membership in a protected class, as here,

she may state a cognizable equal protection claim by asserting that she has been "intentionally

treated differently from others similarly situated, and that there is no rational basis for the

difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). Nowhere in the amended complaint does the plaintiff make such allegations. Indeed, the plaintiff fails to allege that persons similarly situated to her were treated differently by the defendants. As such, Count I is dismissed for failure to state a viable claim.

In moving to dismiss Count II, the County defendants argue that the plaintiff has failed to set forth a cognizable substantive or procedural due process claim. We agree that the plaintiff's substantive due process claim lacks merit. However, she has stated a viable procedural due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause affords procedural and substantive safeguards, <u>Planned Parenthood of Southeastern PA v. Casey</u>, 505 U.S. 833, 846-47 (1992); and the plaintiff appears to complain that the defendants deprived her of both components of due process in the course of displacing and relocating her.[9]

To state a claim for deprivation of procedural due process under § 1983, a plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment, and (2) the procedures available to her did not provide due process of law. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006). Liberally construing the plaintiff's due process claims in a light most favorable to her, she appears to assert that by virtue of the URA, she has a protected property interest in relocation benefits which the defendants did not fully provide her.

The United States Supreme Court has recognized that certain benefits distributed

---

9.    Id. at ¶¶ 102-103.

11

by the government are a form of property protected by the due process clause. See, <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) (disability benefits); <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970) (welfare benefits). Of course, not every government benefits program creates constitutionally protected property interests. In order to have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it." <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).

In <u>Roth</u>, <u>supra</u>, the Court explained that property interests are not created by the Constitution itself. Rather, they are created from an independent source -- such as state law or a statute -- which secures benefits and supports claims of entitlement to them. <u>Id.</u>

In pertinent part, the URA mandates that "[w]henever a program or project to be undertaken by a displacing agency will result in the displacement of any person...", such person is entitled to relocation benefits, including moving and related expenses. 42 U.S.C. § 4622(a)-(b). The Act also provides that relocation assistance advisory services and programs are to be made available to displaced persons. 42 U.S.C. § 4625(b)-(c). It is not disputed that the plaintiff is a "displaced person" under the Act, and that she is entitled to receive relocation benefits. Thus, it appears that she has a protected property interest in such benefits.

Still, to state a viable procedural due process claim, the plaintiff must allege that she received constitutionally inadequate process in connection with the deprivation of her benefits. "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort

law." Zinermon v. Burch, 494 U.S. 113, 126 (1990).

The URA does not provide a hearing for relocation benefit claims, and the plaintiff does not profess entitlement to a hearing. Rather, the Act authorizes the "head of the lead agency" (i.e., the Department of Transportation, see, 42 U.S.C. § 4601(12)) to issue regulations and establish procedures to assure that an aggrieved person may have her claim for benefits reviewed by the head of an agency having authority over the project at issue. See, 42 U.S.C. § 4633(b). Under federal regulations implementing the URA, "[a]ny aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider [her] application for assistance", including "a relocation payment". See, 49 C.F.R. § 24.10(b).

The plaintiff does not complain that she was not provided notice of her right to appeal the Agency's determination of her relocation assistance, and assuredly, she did file a written appeal. Thus, the County defendants argue that the plaintiff was provided with all of the procedural safeguards she was entitled to receive. According to the movants, the plaintiff received a plethora of information regarding her right to relocation assistance as evidenced by the documents attached to her complaint, and further, she received an adequate appeal of her relocation assistance determination.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333. As gleaned from the amended complaint, the plaintiff contends that the defendants failed to promptly and adequately process and review her appeal of the relocation assistance determination as mandated in 49 C.F.R. § 24.10. Specifically, she asserts that the defendants failed to notify her of the proper

13

agency in which to appeal; failed to provide her with access to her relocation file as she requested; failed to promptly review her appeal and consider its justification; failed to assign an authorized agency official to review her appeal; failed to properly recalculate her rental assistance payment; and failed to promptly notify her in writing of her appeal determination.[10]

To the extent she complains that deficiencies in the appeal process deprived her of procedural due process, the plaintiff has stated a viable claim against the County, which may be deemed an Agency or displacing agency under the Act. See, 49 C.F.R. § 24.2(a)(1). However, this claim fails against the individual County defendants.

"A defendant in a § 1983 action must have personal involvement in the alleged wrongs." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997). An executive or supervisory official may be rendered personally liable under § 1983 if he participated in violating a plaintiff's rights, directed others to violate such rights, or had knowledge of and acquiesced in such violations. See, Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Nowhere in the amended complaint does the plaintiff allege that County Commissioners Bayla and Ceraso participated in, were involved in, or directed others to deprive her of her due process rights. Indeed, there is no allegation that Bayla or Ceraso knew of, participated in, or were responsible for any of the complained-of appeal procedures. As such, the plaintiff's procedural due process claim may stand against the County, but it is dismissed against the individual County defendants.

As mentioned above, the plaintiff has not stated a viable substantive due process claim. The Third Circuit Court of Appeals has explained that "the core of the concept of due

_____

10.    Id. at ¶¶ 100 H-M, O.

process is protection against arbitrary action, and only the most egregious official conduct can be said to be arbitrary in the constitutional sense.".  <u>Chainey</u>, <u>supra</u>, 523 F.3d at 219.  An official's conduct violates the substantive component of the Due Process Clause when it "can properly be characterized as arbitrary, or conscience shocking".  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).  Thus, for a substantive due process claim to lie, a plaintiff must have been deprived of a fundamental interest established by the Constitution under circumstances which "shocks the conscience".  <u>Chainey</u> 523 F.3d at 219, citing <u>United Artists Theatre Circuit v. Township of Warrington</u>, 316 F.3d 392, 400-402 (3d Cir. 2003).

       Here, the defendants' alleged failure to properly calculate the plaintiff's relocation assistance and comply with the URA's procedural safeguards is not conscious shocking.  The Third Circuit Court of Appeals has held that in a land-use controversy, official conduct will not be deemed to "shock the conscience" absent allegations of corruption or self-dealing, bias against an ethnic group, interference with constitutionally-protected activity or a virtual "taking" of property.  <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 285-86 (3d Cir. 2004).  Thus, in <u>Eichenlaub</u>, the Court held that allegations that municipal officials applied subdivision requirements to appellants' property that were not applied to other parcels, pursued unannounced and unnecessary inspection and enforcement actions against them, delayed certain permits and approvals, and maligned and muzzled them insufficient to "shock the conscience".  <u>Id.</u> at 286. Based on the plaintiff's allegations of insufficient relocation assistance and deficiencies in the appeal process, none of which involve corruption, self-dealing, or bias against an ethnic group, her substantive due process claim fails.

       Likewise, the plaintiff's civil rights conspiracy claim is deficient.  In Count V, the

plaintiff contends that the defendants conspired to deprive her of her Fourteenth Amendment due process and equal protection rights in violation of 42 U.S.C. § 1985. In moving to dismiss this claim, the County defendants argue that to the extent it arises under 42 U.S.C. § 1985(3), the plaintiff fails to state a viable claim, as she does not allege that the conspiracy was motivated by a class-based, invidiously discriminatory animus. We agree.

In pleading her conspiracy claim, the plaintiff cites to 42 U.S.C. § 1985(3).[11] Under 42 U.S.C. § 1985(3), an action may be brought by a person injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). It is well settled that "because § 1985(3) requires the 'intent to deprive of *equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (emphasis in original), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Here, the plaintiff fails to plead the requisites of a § 1985(3) conspiracy, as the amended complaint is devoid of allegations that the alleged conspiracy was motivated by a class-based, invidiously discriminatory animus. Accordingly, Count V is dismissed.

As for the plaintiff's state law claims, she purports to state a cause of action for breach of contract/unjust enrichment in Count III and negligence in Count IV. The plaintiff's state law claims fail against the County defendants.

With respect to her claim in Count III, the plaintiff has not alleged that she had a

---

11. Id. at ¶ 116.

direct contract with the defendants. Instead, she contends that the defendants created a contract, or quasi-contract with her by using the URA to lure her into believing she would receive relocation assistance if she was displaced by the Project, but having failed to pay her the full amount of relocation assistance to which she was due, the defendants were unjustly enriched at her expense.[12]

To properly plead a cause of action for breach of contract under Pennsylvania law, three elements are necessary: (1) the existence of a contract and its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages. Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa.Super. 2004). As discussed above, the plaintiff does not allege that she had a direct contract with any of the defendants. Furthermore, she does not contend that she was a third party beneficiary of any contract at issue.

The only contracts of record appear to be the aforementioned 2006 and 2007 agreements which HUD and the County entered pursuant to the HOME Investment Partnerships Act. The plaintiff does not assert rights as a third party beneficiary under those contracts, but even if she did, she would not be deemed a third party beneficiary of them.[13]

Under Pennsylvania law,

a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, unless, the circumstances are so compelling that recognition of the beneficiary's right

---

12. Id. at ¶¶ 105-108.

13. It appears that state law, not federal common law, would apply to the issue of whether the plaintiff was a third party beneficiary of the aforesaid contracts, as the United States is not a party to this suit, and no substantial right or duty of the United States hinges on the matter. See, Miree v. DeKalb County, 433 U.S. 25, 31-33 (1977).

is appropriate to effectuate the intention of the parties, and
... the circumstances indicate that the promisee intends to
give the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150-151 (Pa. 1992). Here, neither the County, nor HUD

expressed an intention to benefit the plaintiff in their agreements under the HOME Investment

Partnerships Act. In those contracts, HUD agreed to make funds available in exchange for the

County's agreement to develop affordable housing. Nowhere in those agreements is there

recognition of a right to performance in the plaintiff which is appropriate to effectuate the

intention of the parties. Thus, the plaintiff has not stated a viable breach of contract claim.

In addition, the plaintiff's alternate claim for unjust enrichment cannot stand. An

action based on unjust enrichment is an equitable action which sounds in quasi-contract.

Rahemtulla v. Hassam, 539 F.Supp.2d 755, 780 (M.D.Pa. 2008), citing Sevast v. Kakouras, 915

A.2d 1147, 1153 n.7 (Pa. 2007). A quasi-contract is to be distinguished from an express

contract, because "unlike true contracts, quasi-contracts are not based on the apparent intention

of the parties to undertake the performance in question, nor are they promises. They are

obligations created by law for reasons of justice." Sevast, supra, 915 A.2d at 1153, n.7.

To state a claim for unjust enrichment, a claimant must plead:

(1) benefits conferred on defendant by plaintiff; (2) appreciation
of such benefits by defendant; and (3) acceptance and retention
of such benefits under such circumstances that it would be
inequitable for defendant to retain the benefit without payment
of value.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008); Styer v. Hugo,

619 A.2d 347, 350 (Pa.Super. 1993), aff'd., 637 A.2d 276 (Pa. 1994).

The first element necessary for an unjust enrichment claim is lacking here, as the

plaintiff does not allege that she conferred any benefit on the defendants. Furthermore, "[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [them] to retain." Torchia on Behalf of Tortia v. Torchia, 499 A.2d 581, 582 (Pa.Super. 1985), appeal denied, 644 A.2d 1203 (Pa. 1994).

Hence, "unjust enrichment has been applied in circumstances where the defendant has acted wrongfully or fraudulently in appropriating the plaintiff's property." Rahemtulla, supra, 539 F.Supp.2d at 780, citing Robbins v. Kristofic, 643 A.2d 1079 (Pa.Super. 1994) (defendant misappropriated plaintiffs' funds); Denny v. Cavalieri, 443 A.2d 333 (Pa.Super. 1982) (financial advisors defrauded plaintiff of funds he gave defendants). Here, the defendants did not misappropriate the plaintiff's property by awarding her less relocation assistance than she believed she was due under the URA; neither did they receive a benefit that it would be unconscionable for them to retain. Thus, the plaintiff's claim for unjust enrichment fails.

In Count IV, the plaintiff asserts that the defendants are liable for negligence, as they breached a duty owed to her in failing to comply with the URA. The County defendants argue that the negligence claim against them should be dismissed by virtue of the PA Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 et seq. ("Tort Claims Act").

Under the Tort Claims Act, a local agency[14] is immune from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. This immunity is waived,

---

14. Under the Act, a county is deemed a local agency. Hudson v. Brandywine Hospital, 1999 WL 1240956, *1 (E.D.Pa., Dec. 16, 1999).

however, if a person's injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties which fall within one of the following categories: (1) vehicle liability, (2) the care, custody or control of personal property of others, (3) the care, custody or control of real property in the possession of the local agency, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) the care, custody or control of animals.  42 Pa.C.S.A. §§ 8542(a)(2) and (b).  The County defendants' complained-of acts do not fall within any of these exceptions to immunity.  Thus, the County is immune from the plaintiff's negligence claim.

As for the individual County defendants, it is clear that employees of a local agency acting within the scope of their duties enjoy the same immunity as the local agency, Maloney v. City of Reading, 2006 WL 305440, *5 (E.D.Pa., Feb. 8, 2006), citing 42 Pa.C.S. § 8545, aff'd., 201 Fed. Appx. 853 (3d Cir. 2006); however, "[an] employee may be stripped of his immunity when he engages in conduct that is found to constitute a 'crime, actual fraud or willful misconduct'".  Maloney, 2006 WL 305440 at *5, citing 42 Pa.C.S. § 8550.  Since the individual County defendants are not said to have engaged in fraudulent of willful misconduct, they are immune from the plaintiff's negligence claim.

Therefore, for reasons discussed above, the County defendants' motion to dismiss the amended complaint is granted as to all claims except for the plaintiff's procedural due process claim in Count II against the County.[15]

---

15.  The United States Supreme Court has held that punitive damages are not recoverable against a municipality in a § 1983 suit.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  Thus, the plaintiff's prayer for punitive damages against the County is dismissed.

<u>Federal defendants' motion to dismiss or for summary judgment:</u>

The Federal defendants have moved to dismiss the amended complaint pursuant to F.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to F.R.Civ.P. 56. As to the constitutional claims asserted against them in their official capacities, the Federal defendants argue that such claims should be dismissed based on sovereign immunity, and because they are exempt from § 1983 liability. With respect to the constitutional claims against them in their individual capacities, the Federal defendants argue that they are entitled to qualified immunity and/or the plaintiff has failed to plead viable claims against them.

We agree that the Fourteenth Amendment claims asserted against the Federal defendants in their official capacities under § 1983 must be dismissed. The Third Circuit Court of Appeals has explained:

> § 1983 is derived from the Civil Rights Act of 1871, which was enacted to enforce the Fourteenth Amendment... [T]he Act of 1871... is addressed only to the state and to those acting under color of state authority... [Thus], [i]t is well established that liability under § 1983 will not attach for actions taken under color of federal law.

<u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001). Also see, <u>Hindes v. F.D.I.C.</u>, 137 F.3d 148, 158 (3d Cir. 1998) ("Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law."). Thus, to the extent that the plaintiff complains that defendants Szupper and Tolbert were acting within their official capacities when they violated her Fourteenth Amendment civil rights, she fails to state a claim against them.

The plaintiff's civil rights conspiracy claim under § 1985(3) also fails against the

Federal defendants in their official capacities. While state action is not a pre-requisite to liability under § 1985, see <u>Griffin v. Breckenridge</u>, 403 U.S. 88 (1971), the Federal government is shielded from suit absent a waiver of sovereign immunity. This Court has held that "there is no waiver of sovereign immunity with respect to claims under § 1985(3)". <u>Shoman v. U.S. Customs and Border Protection</u>, 2008 WL 203384, *4 (W.D.Pa., Jan. 24, 2008). As explained in <u>Shoman</u>, the Court lacks subject matter jurisdiction over § 1985(3) claims against Federal officials in their official capacities. <u>Id.</u> Thus, defendants Szupper and Tolbert, acting in their official capacities, are immune from suit under § 1985(3).

As to the §§ 1983 and 1985(3) claims against the Federal defendants in their individual capacities, only the procedural due process claim in Count II can survive for the reasons discussed above. Although defendants Szupper and Tolbert argue otherwise, they are not entitled to qualified immunity from this claim. Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Qualified immunity is available if "reasonable officials in their position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." <u>Larsen v. Senate of the Commonwealth of PA</u>, 154 F.3d 82, 87 (3d Cir. 1998). Based on the Federal defendants' positions with HUD, they should have been aware of the URA's appeal procedures, which the plaintiff contends were not followed, causing her a deprivation of procedural due process.

With respect to the plaintiff's state law claims, her breach of contract/unjust enrichment claim is dismissed for reasons discussed above. Furthermore, this Court lacks

jurisdiction over a purported breach of contract claim as here, which is for money damages exceeding $10,000 arising from an express or implied in fact contract with the United States, as exclusive jurisdiction over said claim lies with the United States Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. See, Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996).

The plaintiff's negligence claim against the Federal defendants also must be dismissed. The Federal Tort Claims Act ("FTCA") "is a partial abrogation of the federal government's sovereign immunity that permits suits for torts against the United States." Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997). Also see, 28 U.S.C. § 1346(b). Importantly however, "the United States is the only proper defendant in an action brought under the FTCA." Aliotta v. United States, 2008 WL 2037748, *4 (W.D.Pa., May 9, 2008), citing 28 U.S.C. § 2679; and Good v. Ohio Edison Co., 149 F.3d 413, 418 (6th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). Accord, McNiff v. Asset Managment Specialists, 337 F.Supp.2d 685, 691 (E.D.Pa. 2004) ("[t]he only proper defendant in an action brought pursuant to the [FTCA] is the United States of America."). Thus, the plaintiff's negligence claim against the Federal Defendants is dismissed.

Moreover, even if the United States was substituted as a party for the Federal defendants, the plaintiff's negligence claim would fail. That is because, as the Federal defendants point out, the plaintiff did not file an administrative claim with HUD prior to commencing this suit. As mandated in 28 U.S.C. § 2675(a), a claimant must first present her claim to the appropriate Federal agency before bringing suit against the United States. In relevant part, 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the
> United States for money damages for injury or death caused
> by the negligent or wrongful act or omission of any employee
> of the Government while acting within the scope of his office
> or employment, unless the claimant shall have first presented
> the claim to the appropriate Federal agency and his claim shall
> have been finally denied by the agency in writing and sent by
> certified or registered mail.

This requirement of filing an administrative claim is jurisdictional and cannot be waived. Bruno v. United States Postal Service, 264 Fed. Appx. 248 (3d Cir. 2008), citing Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).

The Federal defendants' motion to dismiss -- based on lack of subject matter jurisdiction -- is premised on F.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a "facial attack", which is based on the legal sufficiency of the claim, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. Conversely, in reviewing a "factual attack", as here, where a challenge is based on the sufficiency of jurisdictional fact, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." See, Carpet Group Intern. v. Oriental Rug Importers, 227 F.3d 62, 69 (3d Cir. 2000). In such a scenario, "the court may consider evidence outside the pleadings". Gould Electronics, 220 F.3d at 176.

In support of their current motion, the Federal defendants have submitted the declaration of Thomas W. Rodick, who is HUD's Deputy Regional Counsel for the New England Region. Mr. Rodick avers that he is responsible for supervising the review and processing of all

tort claims filed with HUD pursuant to the FTCA; and that based on a search of the files in his office, and to the best of his knowledge, the plaintiff has not filed a claim for injury or damages with HUD.[16]  The plaintiff does not dispute this fact.

Therefore, based on the foregoing, the Federal defendants' motion to dismiss or for summary judgment, treated as a motion to dismiss, is granted as to all claims except for the procedural due process claim against them in their individual capacities in Count II.

An appropriate Order will be entered.

---

16.	See, declaration of Thomas W. Rodick, attached as Exhibit I to the Federal defendants' current motion.

<u>O  R  D  E  R</u>

AND NOW, this 15th day of April 2009, for the reasons set forth in the Court's

Memorandum Opinion,

IT IS ORDERED that the motion to dismiss the amended complaint filed by

defendants Westmoreland County, PA, Thomas Bayla and Thomas Ceraso (Document No. 67) is

granted as to all claims except for the plaintiff's procedural due process claim in Count II against

Westmoreland County, and that the motion to dismiss or, in the alternative, for summary

judgment filed by defendants Michael Szupper and John Tolbert (Document No. 69), treated as a

motion to dismiss, is granted as to all claims except for the procedural due process claim against

them in their individual capacities in Count II.

<u>s/ ROBERT C. MITCHELL</u>
United States Magistrate Judge