IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL FAYLOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 08-996 |
| | ) | |
| MICHAEL SZUPPER, individually and as | ) | |
| Relocation Specialist United States Dept. of | ) | |
| Housing and Urban Development (HUD); | ) | |
| JOHN TOLBERT, individually and as Field | ) | |
| Office Director, HUD; WESTMORELAND | ) | |
| COUNTY, PA., HOMES BUILD HOPE, a | ) | |
| Service of ADELPHOI, USA; WEM | ) | |
| HOUSING, L.P., CHAD RUFFNER, | ) | |
| individually and as Executive Director WEM | ) | |
| Housing L.P. and in official capacity at | ) | |
| HOMES BUILD HOPE; PROFESSIONAL | ) | |
| COMMUNITY COORDINATORS, INC., | ) | |
| and CARLOTTA PAIGE, individually and in | ) | |
| her official capacity at PROFESSIONAL | ) | |
| COMMUNITY COORDINATORS, INC., | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

Presently before the Court is a motion to dismiss the amended complaint or for summary judgment submitted by defendants Professional Community Coordinators, Inc. ("PCC") and Carlotta Paige (Document No. 82), and a motion to dismiss the amended complaint filed by defendants Homes Build Hope, Inc. ("HBH"), WEM Housing, L.P., and Chad Ruffner (Document No. 106). For reasons discussed below, the motions filed by PCC and Ms. Paige, and by HBH, WEM Housing and Mr. Ruffner, treated as motions for judgment on the pleadings, will

be granted as to all claims except for the procedural due process claim in Count II and the negligence claim against them in Count IV.

Also before the Court are the plaintiff's motions for summary judgment (Document No. 102) and for reconsideration of the Court's Memorandum Opinion and Order dated April 15, 2009 (w/ Document No. 102).  As discussed more fully below, the plaintiff's motions for summary judgment and for reconsideration will be denied.

The plaintiff, Cheryl Faylor, proceeding pro se, has filed an amended civil rights complaint pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. §§ 4601, et seq.[1]  The plaintiff contends that the defendants failed to comply with the URA during her relocation to other housing which violated her Fourteenth Amendment rights to equal protection (Count I) and due process (Count II) under 42 U.S.C. § 1983.  She also complains that the defendants engaged in a conspiracy to violate her rights under 42 U.S.C. § 1985(3) (Count V) and are liable for breach of contract/unjust enrichment (Count III) and negligence (Count IV).  The Court's federal question and supplemental jurisdiction are invoked.

Named as defendants in the amended complaint are Michael Szupper, individually and as Relocation Specialist for the U.S. Department of Housing and Urban Development ("HUD"), John Tolbert, individually and as Field Office Director of HUD (collectively, the

---

1.    The URA provides relocation benefits to persons and businesses that fit the statutory definition of "displaced persons".  Messer v. Virgin Islands Urban Renewal Board, 623 F.2d 303, 304 (3d Cir. 1980).  In relevant part, the URA defines the term "displaced person" as: "any person who moves from real property ... as a direct result of a written notice of intent to acquire or the acquisition of such real property ... for a program or project undertaken by a Federal agency or with Federal financial assistance..."  42 U.S.C. § 4601(6)(A)(i)(I).

"Federal defendants"), Westmoreland County, PA, and its Commissioners Thomas Bayla and Thomas Ceraso, individually and in their official capacities as County Commissioners for Westmoreland County, PA (collectively, the "County defendants"), PCC, Carlotta Paige, individually and in her official capacity at PCC, HBH, WEM Housing, and Chad Ruffner, individually and as Executive Director of WEM Housing and in his official capacity at HBH.

In response to the amended complaint, the County defendants moved to dismiss it, and the Federal defendants filed a motion to dismiss or for summary judgment.[2] On April 15, 2009, the Court issued a Memorandum Opinion and Order, granting the County defendants' motion to dismiss all claims except for the plaintiff's procedural due process claim in Count II against Westmoreland County; the Court treated the Federal defendants' motion as a motion to dismiss and granted it on all claims except for the procedural due process claim against them in their individual capacities. On June 30, 2009, the Court issued a Supplemental Memorandum Opinion and Order, granting the Federal defendants' motion for reconsideration and dismissing all claims against them.

In ruling on the motions before us, we rely on and recite portions from the Court's Memorandum Opinion and Order dated April 15, 2009, which set forth facts underlying the plaintiff's claims. The plaintiff alleges that she was a resident at 411 South 6th Street in Jeannette, PA for over five years; that she lived in a townhouse unit that was one of several units targeted for demolition to make way for a renovation project called the Jeannette 6th Street Project (the "Project"); and that the Project utilized federal funding through HUD's HOME

_____

2.    The other named defendants filed answers to the amended complaint, after which they filed their pending motions.

3

Investment Partnership Program.

In 2006 and 2007, HUD and Westmoreland County (the "County") entered into Agreements pursuant to the HOME Investment Partnerships Act, 42 U.S.C. § 12701, et seq., whereby HUD agreed to make funds available in exchange for the County's agreement to develop affordable housing. The County disbursed HUD funds for the Project to HBH, which created WEM Housing to act as the general contractor on the Project. As general contractor, WEM Housing purchased the townhouse units on South 6th Street and hired PCC and Carlotta Paige to assist in relocating residents affected by the Project.

The plaintiff contends that on or about February 21, 2007, WEM Housing signed a purchase agreement with the owner of the building where she resided which was the "initiation of negotiations", at which time the agency was to notify her in writing of her eligibility for relocation assistance, but it failed to do so. In a letter dated March 2, 2007, HBH informed the plaintiff that her family may be displaced by the Project, and it provided her with information as to her potential rights as a displaced person under the URA.

On or about April 2, 2007, employees from PCC met with the plaintiff to obtain information from her which would be used to complete her relocation assistance. However, the plaintiff avers that she received no further information or contact from HBH or PCC until August 2007, by which time her townhouse unit and other units in the building had fallen into disrepair. For instance, the plaintiff asserts that rotting trash and discarded mattresses accumulated in front of the building, grass and weeds grew taller than four feet high, abandoned units were not cleaned, and cockroaches, fleas and other vermin were present on the premises.

The plaintiff contends that on September 12, 2007, she saw Carlotta Paige and

complained about her living conditions and inquired about relocation efforts, and Paige told her they were working on it; that on or about September 21, 2007, she received a letter from Chad Ruffner, informing her that she was eligible for relocation assistance and needed to relocate to a different residence upon 90 days notice, but the letter did not advise her how much rental assistance she would receive; and that on September 24, 2007, she wrote to Ruffner complaining about the vermin problem, after which HBH fumigated the vacant, uncleaned unit next to hers, and Ruffner inspected her premises and said he would talk to Carlotta Paige about it.

The plaintiff asserts that in October 2007, she witnessed two house fires within a four-day period just a block from her residence, and fearing increased vandalism from abandoned housing in the area, she informed HBH and HUD that she intended to move from her residence. In a letter dated October 12, 2007, HBH provided notice to the plaintiff that she had to vacate her unit within 90 days; this letter also informed the plaintiff that she was eligible for $1,450.00 for a moving allowance and $17,262.00 for rental assistance pursuant to the URA.

On October 22, 2007, the plaintiff moved from her residence and signed a lease for a replacement dwelling. She received an advance for her security deposit and the first month of rent in the new dwelling. On November 29, 2007, PCC paid the rental assistance funds.

In a letter dated December 2, 2007, the plaintiff informed HBH and HUD of her intent to appeal her relocation assistance determination, as she believed she was entitled to $17,000 in additional funds. By letter dated February 1, 2008, Chad Ruffner informed the plaintiff that he needed additional information to assess her appeal. In a letter dated March 13, 2008, John Tolbert of HUD advised the plaintiff that after reviewing her appeal, it was determined that she and her family qualified for an additional $9,461.20 in rental assistance.

The plaintiff wrote a letter to John Tolbert dated March 17, 2008, expressing her dissatisfaction with the recalculated amount of her rental assistance. Copies of this letter were sent to Michael Szupper of HUD and the County Commissioners. On March 31, 2008, the plaintiff received payment in connection with her appeal in the amount of $9,961.20, a sum which she believes is less than what she is entitled to under the URA.

The URA is designed to minimize the hardship of displacement on persons like the plaintiff who are displaced as a direct result of programs or projects undertaken by a federal agency or with federal financial assistance. 42 U.S.C. § 4621(b). To that end, the URA provides relocation services and assistance to displaced persons. See, 42 U.S.C. § 4625 and 49 C.F.R. Part 24.[3] The parties agree that the plaintiff was eligible to receive several types of URA relocation services, including: relocation advisory services pursuant to 49 C.F.R. § 24.205; relocation notices pursuant to 49 C.F.R. § 24.203; reimbursement for moving expenses pursuant to 49 C.F.R. §§ 24.301 and 24.302; and payments for the added cost of replacement housing or rental assistance pursuant to 49 C.F.R. §§ 24.401-24.403.

The plaintiff contends that the defendants failed to comply with the URA in several respects -- such as by failing to provide certain relocation services to her, not properly calculating her relocation rental assistance or making timely payment, and not promptly or properly determining her appeal -- all of which deprived her of her Fourteenth Amendment rights

---

[3].   In pertinent part, the URA mandates that "[p]rograms or projects undertaken by a Federal agency or with Federal financial assistance shall be planned in a manner that (1) recognizes, at an early stage in the planning of such programs or projects ... the problems associated with the displacement of individuals ..., and (2) provides for the resolution of such problems in order to minimize adverse impacts on displaced persons ... 42 U.S.C. § 4625(a). Under the URA, relocation assistance advisory services and programs are to be made available to displaced persons by the head of any displacing agency. See, 42 U.S.C. §§ 4625(b)-(c).

to equal protection (Count I) and due process (Count II) under 42 U.S.C. § 1983.  As discussed above, the plaintiff also complains that the defendants engaged in a conspiracy to violate her civil rights under 42 U.S.C. § 1985(3) (Count V) and are liable for breach of contract/unjust enrichment (Count III) and negligence (Count IV).

PCC and Carlotta Paige's motion to dismiss or for summary judgment, and HBH, WEM Housing and Chad Ruffner's motion to dismiss:

   In response to the amended complaint, PCC and Carlotta Paige first filed an answer, denying liability (Document No. 72).  PCC and Paige then moved to dismiss the amended complaint or for summary judgment (Document No. 82).  Similarly, HBH, WEM Housing and Chad Ruffner first responded to the amended complaint by filing an answer (Document No. 73).  They then moved to dismiss the amended complaint pursuant to Fed.R.Civ. P. 12(b)(6) (Document No. 106).  Since these defendants filed answers prior to filing their current motions, we will treat their motions as ones for judgment on the pleadings under F.R.Civ.P. 12(c).  Mele v. Federal Reserve Bank of NY, 359 F.3d 251, 253 n.1 (3d Cir. 2004).

   A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss.  Mele, supra, 359 F.3d at 253.  Thus, we will view all facts presented in the pleadings in a light most favorable to the non-movant.  Id.  A motion for judgment on the pleadings will not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that [they are] entitled to judgment as a matter of law."  Id.

   The Third Circuit Court of Appeals has held that a private cause of action exists against state officials for violations of § 4625 of the URA due to the absence of a comprehensive enforcement scheme under the Act.  Pietroniro v. Borough of Oceanport, 764 F.2d 976, 980 (3d Cir. 1985), cert. denied, 474 U.S. 1020 (1985).  Also see, Munoz v. City of Philadelphia, 2007

WL 2973837, *7-*8 (E.D.Pa., Oct. 10, 2007) ("a private cause of action exists under § 1983 for

violations of § 4625(a) of the URA"), citing <u>Pietroniro</u>.  The defendants do not argue otherwise.

       Rather, in support of their pending motions, the defendants assert that the § 1983

claims against them fail, because they did not act under color of state law.  In the alternative, they

argue that the plaintiff has not pled a viable § 1983 claim or conspiracy against them.

       The United States Supreme Court has stated: "When Congress enacted § 1983 as

the statutory remedy for violations of the Constitution, it specified that the conduct at issue must

have occurred under color of state law; thus liability attaches only to those wrongdoers who carry

a badge of authority of a State and represent it in some capacity."  <u>National Collegiate Athletic</u>

<u>Ass'n. v. Tarkanian</u>, 488 U.S. 179, 191 (1988).[4]  Thus, to state a viable § 1983 civil rights claim,

the plaintiff must plead that the defendants, acting under color of state law, deprived her of a

right secured by the Constitution or laws of the United States.  <u>Kacher v. County of Bucks</u>, 455

F.3d 418, 423 (3d Cir. 2006).

       The plaintiff alleges that PCC "is a business" located in Jeannette, PA, for which

Carlotta Paige works[5], and that HBH and WEM Housing are "business entit[ies]", for which

Chad Ruffner works.[6]  To determine if such private actors are subject to scrutiny under §1983,

we must assess whether their alleged conduct can be "fairly attributable to the state."  <u>Lugar v.</u>

---

4.   Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to the deprivation of
any rights, privileges, or immunities, secured by the constitution and laws, shall be liable to the
party injured, in an action at law, suit in equity or other proper proceeding for redress."

5.   See, amended complaint at ¶¶ 8, 9 and 31.

6.   Id. at ¶¶ 5-7.

Edmondson Oil Co., 457 U.S. 922, 937 (1982).  While there is no single or uniform test to

determine if a private act may be attributable to the state, the Supreme Court has developed

several frameworks for assessing this question, which it summarized as follows:

> [A] challenged activity may be state action when it results
> from the State's exercise of 'coercive power', Blum [v.
> Yaretsky, 457 U.S. 991, 1004 (1982)], when the State provides
> 'significant encouragement, either overt or covert, ibid, or
> when a private actor operates as a 'willful participant in joint
> activity with the State or its agents,' Lugar [supra, 457 U.S.
> at 941].  We have treated a nominally private entity as a state
> actor when it is controlled by an 'agency of the State', Penn-
> sylvania v. Board of Directors of City Trusts of Philadelphia,
> 353 U.S. 230, 231 (1957) (per curiam), when it has been
> delegated a public function by the State, cf., e.g.,  West v.
> Atkins, [487 U.S. 42, 56 (1988)]; Edmonson v. Leesville
> Concrete Co., 500 U.S. 614, 627-628 (1991), when it is
> 'entwined with governmental policies' or when government
> is 'entwined in [its] management or control.'  Evans v.
> Newton, 382 U.S. 296, 299, 301 (1966).

Brentwood Academy v. Tennessee Secondary School Athl. Ass'n., 531 U.S. 288, 296 (2001).

The Third Circuit Court of Appeals has stated that state action cases broadly

divide into two factual categories: "The first category involves an *activity* that is significantly

encouraged by the state or in which the state acts as a joint participant."  Leshko v. Servis, 423

F.3d 337, 340 (3d Cir. 2005) (emphasis in original).  Determining state action in these cases

"requires tracing the activity to its source to see if that source fairly can be said to be the state.

The question is whether the fingerprints of the state are on the activity itself."  Id.

"The second category of cases involves an *actor* that is controlled by the state,

performs a function delegated by the state, or is entwined with government policies or

management."  Id. (emphasis in original).  In these cases, determining state action "consists of

asking whether the actor is so integrally related to the state that it is fair to impute to the state

responsibility for the action.  The question ... is whether the state so identifies with the individual

(or entity) who took the challenged action that we deem the state's fingerprints to have been on

the action."  Id.

In attempting to show state action here, the plaintiff points to the fact that HUD

and the County entered into agreements pursuant to the Home Investment Partnerships Act, 42

U.S.C. §§ 12701, et seq., wherein HUD agreed to make funds available in exchange for the

County's agreement to develop affordable housing.  The plaintiff alleges, and the record shows

that in order to receive HOME Investment partnership funding ("HOME funds"), the County

provided certifications that it would comply with the URA and its implementing regulations and

follow a residential anti-displacement and relocation assistance plan.[7]

In order "to receive federal funds for projects, ... state and local agencies must

certify that they will provide relocation benefits under the URA to affected persons and

businesses."  Supreme Oil Co. v. Metropolitan Transp. Authority, 157 F.3d 148, 150 (2d Cir.

1998), citing 42 U.S.C. § 4604.  "The grantee agency [here, the County] may contract with

another public or private agency to administer the relocation benefits, but the actual grantee

remains at all times responsible for assuring that the federal funds are disbursed in compliance

with the URA."  Supreme Oil Co., 157 F.3d at 150.

Here, the County contracted with HBH to develop the Project at issue, and in

connection therewith, it loaned HOME funds to HBH and WEM Housing.  WEM Housing hired

PCC and Carlotta Paige to assist in relocating persons displaced by the Project.  In a letter

---

7.   See, Federal defendants' Exhibits A, B, D and E in support of their motion to dismiss or
for summary judgment, and amended complaint at ¶¶ 86-87.

agreement accepted on April 11, 2007, PCC agreed to provide comprehensive relocation services to HBH in connection with the Project.[8]

It is clear that acts of private contractors do not become acts of the government by reason of their performing public contracts or public functions.  Rendell-Baker v. Kohn, 457 U.S. 830, 841-42 (1981).  However, state action may arise if private actors are delegated a "traditionally and exclusively" state function.  Leshko, 423 F.3d at 341, citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, [352]-53 (1974) (state action may be found "in the exercise by a private entity of powers traditionally exclusively reserved to the State.").  Thus, in West, supra, the Supreme Court found that "[c]ontracting out prison medical care [did] not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody". 487 U.S. at 56.  The Court explained that the State bore an affirmative obligation to provide adequate medical care to prison inmates, notwithstanding that it delegated that function to a private doctor who voluntarily assumed such obligation by contract.  Id.  Finding that the doctor was vested with authority to fulfill the State's medical obligations at the prison, the Court held that he was a state actor, and his medical treatment was "fairly attributable to the State".  Id. at 56-57.

Here, we must determine if the movants -- in providing relocation benefits pursuant to the URA -- engaged in acts "fairly attributable to the State".  Importantly, "the relevant question is not simply whether a private group is serving a 'public function'", but "whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" Rendall-Baker, supra, 457 U.S. at 842 (emphasis in original) (citations omitted).

---

8.   See, plaintiff's Exhibit 40.

Here, to receive federal funds for the Project, the County was required to give assurances that it would provide relocation benefits and services to displaced persons.  See, 42 U.S.C. § 4630.[9]  As mentioned above, the County provided such assurances and certifications to HUD.  The County then contracted with HBH to develop the Project, it loaned HOME funds to HBH and WEM Housing, and WEM Housing hired PCC and Paige to assist in providing relocation services to persons displaced by the Project.  All the while, the County remained responsible for ensuring that relocation benefits were disbursed in compliance with the URA. Supreme Oil, 157 F.3d at 150.  According to the plaintiff, the County delegated its responsibility for ensuring URA compliance to the movants, who improperly administered URA benefits.[10]

At this juncture, the parties have not addressed whether the function of providing relocation benefits to displaced persons under the URA is traditionally the exclusive prerogative of the state.  In Leshko, the Court noted that "the traditionally exclusive public function requirement is a rigorous standard that is rarely satisfied."  423 F.3d at 347.  However, liberally construing the plaintiff's allegations, as we must for pro se complaints, the movants may be said to have performed a traditionally exclusive governmental function in providing URA relocation benefits to her so as to be deemed state actors.

Still, we must assess whether the plaintiff has set forth a viable § 1983 claim

---

9.   In part, 42 U.S.C. § 4630 provides: "Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a displacing agency (other than a Federal agency), under which Federal financial assistance will be available to pay all or part of the cost of a program or project which will result in the displacement of any person on or after January 2, 1971, unless he receives satisfactory assurances from such displacing agency that – (1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons ...".

10.   See, amended complaint at ¶¶ 86-89, and plaintiff's current motions at ¶¶ 51-55, 61.

against these defendants. "[T]he first step in evaluating a § 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

In Count I, the defendants are said to have violated the plaintiff's equal protection rights by failing to provide her with relocation assistance and services mandated by the URA. The United States Supreme Court has explained:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.

City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

Here, the plaintiff has failed to plead a viable Fourteenth Amendment denial of equal protection claim. Where a plaintiff fails to allege membership in a protected class, as here, she may state a cognizable equal protection claim by asserting that she has been "intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Nowhere in the amended complaint does the plaintiff make such allegations. Rather, the plaintiff confirms that she "was not treated differently than the other displaced people of [her] building."[11] As such, Count I is dismissed for failure to state a claim.

In Count II, the defendants are said to have violated the plaintiff's Fourteenth Amendment due process rights. The Due Process Clause of the Fourteenth Amendment provides

---

11. See, ¶ 41 of the plaintiff's current motions.

that no state shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause affords procedural and substantive safeguards, <u>Planned Parenthood of Southeastern PA v. Casey</u>, 505 U.S. 833, 846-47 (1992); and the plaintiff complains that the defendants deprived her of both components of due process in the course of displacing and relocating her.

To state a claim for deprivation of procedural due process under § 1983, a plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment, and (2) the procedures available to her did not provide due process of law.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006).  Construing the plaintiff's allegations in a light most favorable to her, she asserts that she has a protected property interest in relocation benefits which the defendants did not fully provide her.

The United States Supreme Court has recognized that certain benefits distributed by the government are a form of property protected by the due process clause.  See, <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) (disability benefits); <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970) (welfare benefits).  However, not every government benefits program creates constitutionally protected property interests.  In order to have a property interest in a benefit, a person must "have a legitimate claim of entitlement to it."  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972).

In <u>Roth</u>, <u>supra</u>, the Court explained that property interests are not created by the Constitution itself.  Rather, they are created from an independent source -- such as state law or a statute -- which secures benefits and supports claims of entitlement to them.  <u>Id.</u>

The URA mandates that "[w]henever a program or project to be undertaken by a

14

displacing agency will result in the displacement of any person...", such person is entitled to relocation benefits, including moving and related expenses. 42 U.S.C. § 4622(a)-(b). The Act also provides that relocation assistance advisory services and programs are to be made available to displaced persons. 42 U.S.C. § 4625(b)-(c). It is not disputed that the plaintiff is a "displaced person" under the Act who is entitled to receive relocation benefits. Thus, it appears that she has a protected property interest in such benefits.

Nonetheless, to state a viable procedural due process claim, the plaintiff must allege that she received constitutionally inadequate process in connection with the deprivation of her benefits. "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon v. Burch, 494 U.S. 113, 126 (1990).

The URA does not provide a hearing for relocation benefit claims, and the plaintiff does not profess entitlement to a hearing. Rather, the Act authorizes the "head of the lead agency" (i.e., the Department of Transportation, see, 42 U.S.C. § 4601(12)) to issue regulations and establish procedures to assure that an aggrieved person may have her claim for benefits reviewed by the head of an agency having authority over the project. 42 U.S.C. § 4633(b). Under federal regulations implementing the URA, "[a]ny aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider [her] application for assistance", including "a relocation payment". See, 49 C.F.R. § 24.10(b). The term "Agency" means: "the Federal Agency, State, State Agency,

or person that acquires real property or displaces a person." 49 C.F.R. § 24.2(a)(1).

As gleaned from the amended complaint, the plaintiff contends that the defendants failed to promptly and adequately process and review her appeal of the relocation assistance determination as mandated in 49 C.F.R. § 24.10.  Specifically, she asserts that the defendants failed to notify her of the proper agency in which to appeal; failed to provide her with access to her relocation file as she requested; failed to promptly review her appeal and consider its justification; failed to assign an authorized agency official to review her appeal; failed to properly recalculate her rental assistance payment; and failed to promptly notify her in writing of her appeal determination.[12]

To the extent she complains that deficiencies in the appeal process deprived her of procedural due process, the plaintiff has stated a viable claim against the movants, as they are said to have participated in the complained-of appeal procedures.[13]  As such, the procedural due process claim will not be dismissed against these defendants.

However, the plaintiff has failed to state a viable substantive due process claim. The Third Circuit Court of Appeals has explained that "the core of the concept of due process is protection against arbitrary action, and only the most egregious official conduct can be said to be arbitrary in the constitutional sense.".  Chainey, supra, 523 F.3d at 219.  An official's conduct violates the substantive component of the Due Process Clause when it "can properly be characterized as arbitrary, or conscience shocking".  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Thus, for a substantive due process claim to lie, a plaintiff must have been

---

12.   See, amended complaint at ¶¶ 100 H-M, O.

13.   Id. at ¶¶ 51-52, 61-63, 65-68, 70, 73-74, 77.

deprived of a fundamental interest established by the Constitution under circumstances which "shocks the conscience".  Chainey 523 F.3d at 219, citing United Artists Theatre Circuit v Township of Warrington, 316 F.3d 392, 400-402 (3d Cir. 2003).

Here, the defendants' alleged failure to properly calculate the plaintiff's relocation assistance and comply with the URA is not conscious shocking.  The Third Circuit Court of Appeals has held that in a land-use controversy, official conduct will not be deemed to "shock the conscience" absent allegations of corruption or self-dealing, bias against an ethnic group, interference with constitutionally-protected activity or a virtual "taking" of property.  Eichenlaub v. Township of Indiana, 385 F.3d 274, 285-86 (3d Cir. 2004).  Thus, in Eichenlaub, the Court held that allegations that municipal officials applied subdivision requirements to appellants' property that were not applied to other parcels, pursued unannounced and unnecessary inspection and enforcement actions against them, delayed certain permits and approvals, and maligned and muzzled them insufficient to "shock the conscience".  Id. at 286.  Based on the plaintiff's allegations of insufficient relocation assistance and failure to comply with the URA, none of which involve corruption, self-dealing, or bias against an ethnic group, her substantive due process claim fails.

In Count V, the plaintiff contends that the defendants conspired to deprive her of her Fourteenth Amendment due process and equal protection rights in violation of 42 U.S.C. § 1985.  In pleading her conspiracy claim, the plaintiff cites to 42 U.S.C. § 1985(3).[14]

Under 42 U.S.C. § 1985(3), an action may be brought by a person injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class

---

14.    Id. at ¶ 116.

of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  It is well settled that "because § 1985(3) requires the 'intent to deprive of *equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action' in order to state a claim."  <u>Farber v. City of Paterson</u>, 440 F.3d 131, 135 (3d Cir. 2006) (emphasis in original), quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).  Here, the plaintiff has failed to plead the requisites of a § 1985(3) conspiracy, as the amended complaint is devoid of allegations that the alleged conspiracy was motivated by a class-based, invidiously discriminatory animus.  Hence, Count V is dismissed.

As for the plaintiff's state law claims, she purports to state a cause of action for breach of contract/unjust enrichment in Count III and negligence in Count IV.  While the breach of contract/unjust enrichment claim fails against these defendants, the plaintiff has set forth a viable negligence claim against them.

With respect to her claim in Count III, the plaintiff has not alleged that she had a direct contract with any party.  Instead, she contends that the defendants created a contract, or quasi-contract with her by using the URA to lure her into believing she would receive relocation assistance if she was displaced by the Project, but having failed to pay her the full amount of relocation assistance to which she was due, the movants were unjustly enriched at her expense.[15]

To properly plead a cause of action for breach of contract under Pennsylvania law, three elements are necessary: (1) the existence of a contract and its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages.  <u>Omicron Sys., Inc. v. Weiner</u>, 860

---

15.   Id. at ¶¶ 105-108.

A.2d 554, 564 (Pa.Super. 2004).  As discussed above, the plaintiff does not allege that she had a direct contract with any movant.  Further, she does not contend that she was a third party beneficiary of any contract at issue.  Thus, the plaintiff's breach of contract claim is dismissed.

In addition, the plaintiff's alternate claim for unjust enrichment cannot stand.  An action based on unjust enrichment is an equitable action which sounds in quasi-contract. Rahemtulla v. Hassam, 539 F.Supp.2d 755, 780 (M.D.Pa. 2008), citing Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007).  A quasi-contract is to be distinguished from an express contract, because "unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performance in question, nor are they promises.  They are obligations created by law for reasons of justice."  Sevast, supra, 915 A.2d at 1153, n.7.

To state a claim for unjust enrichment, a claimant must plead:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008); Styer v. Hugo, 619 A.2d 347, 350 (Pa.Super. 1993), aff'd., 637 A.2d 276 (Pa. 1994).

The first element necessary for an unjust enrichment claim is lacking here, as the plaintiff does not allege that she conferred any benefit on the movants.  Furthermore, "[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [them] to retain."  Torchia on Behalf of Tortia v. Torchia, 499 A.2d 581, 582 (Pa.Super. 1985), appeal denied, 644 A.2d 1203 (Pa. 1994).

19

For instance, "unjust enrichment has been applied in circumstances where the defendant has acted wrongfully or fraudulently in appropriating the plaintiff's property." Rahemtulla, supra, 539 F.Supp.2d at 780, citing Robbins v. Kristofic, 643 A.2d 1079 (Pa.Super. 1994) (where defendant misappropriated plaintiffs' funds); and Denny v. Cavalieri, 443 A.2d 333 (Pa. Super. 1982) (where financial advisors defrauded plaintiff of funds he gave defendants). Here, the movants did not misappropriate the plaintiff's property by awarding her less relocation assistance than she believed she was due under the URA; neither did they receive a benefit that it would be unconscionable for them to retain.  Thus, the claim for unjust enrichment fails.

In Count IV, the plaintiff asserts that the defendants are liable for negligence, as they breached a duty owed to her in failing to comply with the URA.[16]  To state a cause of action for negligence under Pennsylvania law, a claimant must plead: (1) a duty of care owed by the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the claimant's resulting injury, and (4) actual harm or damage suffered by the claimant.  Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).

In their motions to dismiss or for summary judgment, the defendants insist that the plaintiff's negligence claim is barred by the "gist of the action" doctrine.  We disagree.

Under Pennsylvania law, "courts are cautious about permitting tort recovery based on contractual breaches."  Pittsburgh Construction Co. v. Griffith, 834 A.2d 572, 581 (Pa.Super. 2003), citing Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).  Thus, courts utilize the "gist of the action" test "to determine whether tort claims that accompany contract claims should be

---

16.    See, amended complaint at ¶¶ 110-114, and plaintiff's pending motions at ¶¶ 52, 84-85.

allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional

damages for a breach of contract". Bohler-Uddeholm America, Inc. v. Ellwood Group, 247 F.3d

79, 103 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002).

    In Bohler-Uddeholm, supra, the Third Circuit Court of Appeals discussed the

"gist of the action" test as follows:

> to be construed as a tort action, the [tortious] wrong
> ascribed to the defendant must be the gist of the
> action with the contract being collateral.... [T]he
> important difference between contract and tort
> actions is that the latter lie from the breach of duties
> imposed as a matter of social policy while the
> former lie for the breach of duties imposed by
> mutual consensus.

Id., quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581,

590 (Pa.Super. 1996), cert. denied, 695 A.2d 787 (Pa. 1997).

    As discussed above, the plaintiff did not have a contractual relationship with the

defendants; thus, no contractual duties imposed by mutual consensus were breached. Conversely,

the defendants are said to have acted negligently in providing relocation services to the plaintiff,

during which they were "callously indifferent" to her.[17]  Since the plaintiff has not pled facts

supporting a breach of contract claim, her negligence claim in Count IV is the "gist of the action"

and not barred.

    Therefore, the current motions filed by the defendants, treated as motions for

judgment on the pleadings, will be granted as to all claims except for the procedural due process

claim in Count II and the negligence claim against them in Count IV.

---

17. Id.

Plaintiff's motions for summary judgment and for reconsideration of the Court's Memorandum
Opinion and Order dated April 15, 2009:

The plaintiff moves for summary judgment on all of the claims in her amended

complaint.  Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

The plaintiff has not shown that she is entitled to summary judgment on her

claims.  Rather, as set forth in the Court's rulings in this case, the plaintiff has failed to state a

viable cause of action against the Federal defendants and the County Commissioners, and many

of her claims against the other defendants are deficient.  While the plaintiff has pled a viable

claim for denial of procedural due process against the County and the movants, and negligence

against the movants, genuine issues of material fact exist on these claims.  Accordingly, the

plaintiff's motion for summary judgment will be denied.

The plaintiff also moves for reconsideration of the Court's Memorandum Opinion

and Order dated April 15, 2009 to the extent it dismissed her claims against the County

defendants and the Federal defendants.  "[A] motion for reconsideration is placed within the

sound discretion of the district court".  Hudson United Bank v. Litenda Mortgage Corp., 142

F.3d 151, 159-60 (3d Cir. 1998).  "[A] judgment may be altered or amended if the party seeking

reconsideration shows at least one of the following grounds:

> (1) an intervening change in the controlling law;
>
> (2) the availability of new evidence that was not
> available when the court granted the motion for
> summary judgment; or
>
> (3) the need to correct a clear error of law or fact

or to prevent manifest injustice."

<u>Max's Seafood Cafe v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999).

   The plaintiff has not shown that the Court's Memorandum Opinion and Order dated April 15, 2009 should be altered to grant summary judgment on her claims.  Consequently, her motion for reconsideration will be denied.

   An appropriate Order will be entered.

<u>O R D E R</u>

AND NOW, this 14th day of September 2009, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the motion to dismiss the amended complaint or for summary judgment filed by defendants Professional Community Coordinators, Inc. and Carlotta Paige (Document No. 82), treated as a motion for judgment on the pleadings, is granted as to all claims except for the procedural due process claim in Count II and the negligence claim against them in Count IV.

IT IS ALSO ORDERED that the motion to dismiss the amended complaint filed by defendants Homes Build Hope, Inc., WEM Housing, L.P. and Chad Ruffner (Document No. 106), treated as a motion for judgment on the pleadings, is granted as to all claims except for the procedural due process claim in Count II and the negligence claim against them in Count IV.

IT IS FURTHER ORDERED that the plaintiff's motions for summary judgment (Document No. 102) and for reconsideration of the Court's Memorandum Opinion and Order dated April 15, 2009 (w/Document No. 102) are denied.

<u>s/ ROBERT C. MITCHELL</u>
United States Magistrate Judge

24